Prouty et. al. v. Southwestern Vermont Med. Ctr., Inc., No. 89-2-13 Bncv (Wesley, J., Oct.. 26, 2013).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## VERMONT SUPERIOR COURT

| | |
|---|---|
| **SUPERIOR COURT** <br> **Bennington Unit** | **CIVIL DIVISION** <br> **Docket No. 89-2-13 Bncv** |

| | |
|---|---|
| **Jean Prouty, individually and in her Capacity as Executrix of the Estate of Donald E. Prouty, Jr., Late of Pownal, Vermont,** <br> **Plaintiff.** <br><br> **v.** <br><br> **Southwestern Vermont Medical Center, Inc.,** <br> **Defendants.** | |

### Opinion & Order
### Granting Plaintiff's Motion to Compel and Denying Defendant's Motion for Protective Order

### Background

Plaintiff sues Defendant for negligence and wrongful death, alleging the following facts. Donald Prouty was admitted to the Southwestern Vermont Medical Center on August 22, 2011. Prouty suffered from pains, dizziness, and liver damage. Defendant determined Prouty was in danger of falling and decided he should be monitored, placed in a bed with a pressure-sensitive alarm, and roomed near the nurses' station. On August 25, 2011, Prouty left his bed and fell. The fall produced a fracture to Prouty's hip. On September 6, 2011, Prouty died from complications related to his hip fracture. Plaintiff filed her complaint on February 26, 2013.

On March 25, 2013, Defendant answered the complaint. The answer denies almost all of Plaintiff's allegations. Plaintiff admits that it is a hospital and that Plaintiff was admitted to the hospital on August 22, 2011. Although Defendant references Prouty's medical records, it denies that Prouty fell, that he suffered injuries as a result of his fall, and that the fall caused his death. Defendant also lists eight affirmative defenses citing no facts to support them: failure to state a claim, statute of limitations, comparative fault, superseding cause, discharge in bankruptcy, assumption of the risk, negligence of a third party, and an unidentified future affirmative defense.

On March 25, 2013, Plaintiff served Defendant with interrogatories and requests to produce. Defendant responded on June 27, 2013. Plaintiff's counsel contacted Defendant's counsel on August 15, 2013 to raise concerns about the adequacy of those responses. Counsel for both parties had a phone conversation on September 3, 2013 and were unable to resolve their differences. On September 16, 2013, Plaintiff filed a motion to compel, accompanied by a certification as required by V.R.C.P. 26 (h) regarding efforts at avoiding seeking judicial relief. Through oversight, and failure to determine whether the time for response had passed, the Court

mistakenly granted the motion on September 18, 2013. On October 2, 2013, Defendant responded to Plaintiff's motion to compel and filed a cross-motion for a protective order. Plaintiff replied to the opposition and cross motion on October 11, 2013. The Court vacates its earlier summary determination, and grants relief as described below based on the issues framed by the pleadings.

The disagreements relate to the discoverability of documents that may have been generated pursuant to a peer review process and also attorney-client privilege. Plaintiff also seeks information about employment status of certain individuals and information about Defendant's affirmative defenses. The parties further dispute whether turning over business records was a sufficient form of disclosure to some requests for information. Defendant seeks a protective order and Plaintiff seeks expenses.

**Discussion**

Decisions on discovery requests "are left to the sound discretion of the trial judge." *Schmitt v. Lalancette*, 2003 VT 24, ¶ 9, 175 Vt. 284. In exercising its, the trial court must apply the rules and statutes governing discovery. As provided by V.R.C.P. 26(b), the scope of discovery is broad. "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." V.R.C.P. 26(b)(1). To withhold information based on privilege, a "party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." V.R.C.P. 26(b)(5)(A). A party invoking a privilege has the burden of showing the privilege applies. *Douglas v. Windham Superior Court*, 157 Vt. 34, 43 (1991) (quoting *King v. Conde*, 121 F.R.D. 180, 189 (E.D.N.Y. 1988)).

1. *Peer Review Privilege under 26 V.S.A. § 1443*

The Court starts by reviewing Defendant's claim that much of the information sought is protected by the peer review privilege. Vermont recognizes a privilege for information generated by a hospital after an adverse event. *See* 26 V.S.A. §§ 1441, 1443. The purpose of the privilege is to encourage hospitals "to evaluate and improve the quality of health care rendered by providers of health services." *Id.* § 1441. The statute therefore protects materials that a peer review committee generated. *See id.* § 1443(a). The statute protects neither the underlying information that allowed the creation of those materials nor materials generated for other purposes but submitted to the peer review committee. *See id.* 18 V.S.A §§ 1912–19 also create protections for information generated by hospitals to improve safety. Like 26 V.S.A § 1443, Title 18 does not protect the original information. *See* 18 V.S.A. § 1917(g).

The privilege for peer view committees is narrow. In one case, the Vermont Supreme Court discussed whether an expert could testify about how a peer review process could give a hospital knowledge of risk. *See Wheeler v. Centr. Vt. Med. Ctr., Inc.*, 155 Vt. 85, 88–89 (1990). Of most importance to this case, the Vermont Supreme Court clarified that while information generated by a peer review committee is privileged, independently discoverable information is not. *Id.* at 90–91. The Federal District Court for Vermont also has discussed the peer review

privilege on a motion to compel. *See Robinson v. Springfield Hosp.*, 109-CV-75, 2010 WL 503096, *1 (D. Vt. Feb. 5, 2010). In *Robinson*, the plaintiff sought to compel two medical providers to describe what occurred in meetings after a patient's death. *Id.* The medical providers refused on the grounds of privilege. Judge Murtha noted "the dividing line between peer review and normal business operations can be unclear" and the privilege only applies where the parties observe proper formalities. *Id.* *2. He then required disclosure because the discussions occurred in the context of normal business operations. *Id.* *2–3.

A case from the Missouri Court of Appeals also provides guidance. *See Dixon v. Darnold*, 939 S.W.2d 66, 70 (Mo. Ct. App. 1997). In *Dixon*, plaintiff in a medical negligence action appealed an order that protected documents from discovery. *Id.* at 68. The appeals court noted that Missouri, like Vermont, has a statute protecting the findings of a peer review committee. *Id.*; *see also* Mo. Ann. Stat. § 537.035 (protecting peer view committees). The appeals court noted "the burden rests on the party claiming the privilege to establish that the material is, in fact, not discoverable." *Dixon*, 939 S.W.2d at 70. The court concluded the hospital did not meet its burden because blanket assertions are insufficient to invoke the privilege. *Id.*

Defendant must answer Plaintiff's interrogatories 7, 10, 13, 28, 29, and 33–35 because Defendant has not stated a valid claim for privilege. As described above, the Court recognizes that reports produced by a peer review committee are not discoverable. *See* 26 V.S.A § 1443(a). Nevertheless, the party invoking a privilege must show the privilege applies. Defendant cannot exclude all information considered by a peer review committee. *See Wheeler*, 155 Vt. at 90–91. Instead, Defendant may only refuse to disclose material that Defendant shows was created as part of a formal peer view process. *See id.*; *see also Robinson*, 2010 WL 503096, *2–3 (discussing types of privileged conversations). In this case, as in *Dixon*, Defendant has done little more than make a blanket assertion of privilege. *See* 939 S.W.2d at 70. Blanket assertions are insufficient to invoke a privilege. *See id.* Moreover, Defendant must comply with the requirements of V.R.C.P. 26(b). Because Defendant has failed to provide sufficient information demonstrating circumstances justifying the claim of privilege, Defendant may not properly refuse to respond by invoking privilege. S*ee Douglas*, 157 Vt. at 43.

Defendant's argument relying on Title 18 is similarly unpersuasive. 18 V.S.A. § 1917(a) creates protections for documents hospitals submit to the government to improve safety. The purpose of this law is to improve hospital safety. *See* 18 V.S.A. § 1913(a). On the other hand, Title 18 does not create additional discovery protections for hospitals. 18 V.S.A. § 1917(g). Moreover, Defendant's argument is too vague to properly assert a privilege and Defendant has not met its burden. *See Douglas*, 157 Vt. at 43; *see also Dixon*, 939 S.W.2d at 70 (discussing the difficulties with blanket assertions of medical privileges).[1]

Defendant shall respond within 15 days with all non-privileged information that responds to Plaintiff's interrogatories. The Court's order does not require Defendant to disclose a *report* produced by a peer review committee. *See Wheeler*, 155 Vt. at 89, fn. 3. Nevertheless, as

---

[1] Defendant's answer further illustrates the Court's problems with its unadorned assertion of privilege. According to the answer, the fall did not occur. If the fall did not occur, then there would be nothing to review and no privileged information. Although a party may make alternative defenses under V.R.C.P. 8(e)(2), a party may not use the broad rules of pleading to circumvent the discovery rules.

discussed above, except for the formal peer review report, much of the information that conceivably was reviewed by a peer review committee is not privileged. Defendant must state what it withholds with sufficient information to allow Plaintiff and the Court to evaluate its claim. Any information Defendant withholds must be expressly identified, including in cases where Defendant answers part of a question.

### 2. *Attorney-Client Privilege*

The Court next considers whether information requested by Plaintiff is protected by attorney-client privilege. *See* V.R.E. 502. In response to Interrogatories number 12–17 Defendant asserts attorney client privilege. These interrogatories seek the factual basis for Defendant's theory of the case. For example, Interrogatory number 12 seeks to determine if Defendant agrees that Prouty suffered hip fractures while at the hospital. Similarly, Interrogatory number 16 seeks information about the factual basis of Defendant's affirmative defenses.

Again, the Court recognizes the existence of attorney-client privilege but can not conclude that Defendant has properly asserted it. *See* V.R.E. 502. The burden to show a privilege lies with the party holding the privilege and the asserting party must comply with V.R.C.P. 26(b). Blanket statements that facts related to Plaintiff's claims are covered by attorney-client privilege are insufficient to invoke the privilege. *See Hayworth v. Schilli Leasing, Inc.*, 669 N.E.2d 165, 169 (Ind. 1996) (noting "courts disfavor blanket claims of privilege" in the context of an assertion of attorney-client privilege). Considering that Defendant's answer verged on a general denial, and that it appears to have plead a host of affirmative defenses reflexively with no discernible, or even plausibly imagined, factual basis for most, the Court expresses extreme skepticism that Defendant can validly meet a request for the facts underlying its pleadings by invoking attorney-client privilege in a similarly sweeping fashion. *See* V.R.C.P. 11(b). Therefore, the Court grants Plaintiff's motion to compel.

### 3. *Business Records under V.R.C.P. 33(c)*

In interrogatories 24–29, Plaintiff sought information relating to the precautions Defendant took to protect Mr. Prouty against a fall. Defendant objected to the questions as exceeding the scope of discovery permitted by V.R.C.P. 33(c). This response is puzzling. While V.R.C.P. 33(c) allows a party to submit business records in response to interrogatories, the rule does not establish limits to the scope of discovery. The Court also notes that V.R.C.P. 33(c) requires a party that invokes the rule to specify where the requesting party can find the information. Defendant is required to respond to interrogatories 24–29.

### 4. *Employment Status*

In Interrogatory 9, Plaintiff requested information about the employment status of Mr. Prouty's caretakers. Defendant argued employment status is irrelevant. As indicated by its motion, Plaintiff requested this information because its attorneys wish to determine which witnesses they may contact without seeking permission from Defendant's counsel. *See* Vermont Rule of Professional Conduct 4.2. Plaintiff's justification shows the employment status is relevant, and Plaintiff's motion to compel is granted.

5. *Privilege Log*

As previously discussed, in response to Defendant's objections based on privilege, Plaintiff requests Defendant document the privileges it asserts with accompanying information that allows Plaintiff to assess those privileges. As described above, a party asserting a privilege must provide context for the opposing party to support justification for the assertion. Defendant's continuing refusal in the absence of the proffer of a privilege log runs afoul of both V.R.C.P. 26(b)(5)(A) and V.R.C.P. 26(h*)*.

6. *Defendant's Motion for Protective Order under V.R.C.P.26(c)*

Defendant requests the Court grant a protective order to avoid disclosure of privileged information. For good cause, the Court may issue a protective order. See V.R.C.P. 26(c). Protecting privileged information is often good cause. In this case, however, Defendant has made no showing that its refusal to make disclosure was properly grounded in any claim of privilege. Therefore, the Court must deny Defendant's request for a protective order.

7. *Attorney's Fees & Costs*

V.R.C.P. 37(a)(4) provides that the Court shall grant fees and costs to the party moving for a discovery order if the moving party prevails. Having prevailed as to virtually every request to compel, based on Defendant's failure as to most items to supply any reasoned basis for its refusal to comply, Plaintiff is entitled to its expenses associated with these proceedings to compel. Plaintiff shall submit its request for reimbursement within 15 days, to which Defendant may respond within 10 days.

## **Order**

The Court **GRANTS** Plaintiff's motion to compel. Defendant must answer Plaintiff's interrogatories within 15 days. The Court **DENIES** Defendant's motion for a protective order. Plaintiff shall submit its request for fees and costs within 15 days, to which Defendant may respond within 10 days.

Dated at Bennington, Vermont on October 30, 2013

John P. Wesley
Superior Court Judge

5